AO-106 (Rev. 06/09)-Application for Search Warrant

# FILED

## UNITED STATES DISTRICT COURT

MAR 22 2023

for the

Northern District of Oklahoma

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of<br>1178 E. 60th Street, Apartment A Tulsa, OK and 1555 N. Indianapolis Avenue Tulsa, OK | ) Case No. 23MJ-186 JFJ<br>)<br>) **FILED UNDER SEAL**<br>)<br>) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A and B

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment C

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a) | Drug Conspiracy |

The application is based on these facts:
   See Affidavit of TFO William Mackenzie, DEA, attached hereto.

☒ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

TFO William Mackenzie, DEA
Printed name and title

Sworn before me via phone.
Date: 3/22/23

_____
Judge's signature

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of<br>1178 E. 60th Street, Apartment A<br>Tulsa, OK and 1555 N. Indianapolis<br>Avenue Tulsa, OK | Case No. _____ |

**Affidavit for Search Warrant**

1. I, William R. Mackenzie, Task Force Officer with the Drug Enforcement Administration (DEA), being duly sworn, do depose and state that:

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of a residences located at 1178 E. 60th Street, apartment A and 1555 N. Indianapolis Avenue. Both residences are located in Tulsa, Oklahoma and in the Northern District of Oklahoma. The residences are described in Attachments "A" and "B."

3. I have been deputized as a Task Force Officer with the Drug Enforcement Administration (DEA) and I am presently assigned to the Tulsa, Oklahoma office. I am a police officer with the Tulsa Police Department (TPD) and have been so employed for over twenty-two years. I have a Bachelors Degree in Criminal Justice from East Central University. Since becoming a Narcotics Detective with TPD/SID, I have participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and

distributed and the methods of payment for such drugs. I have been the primary investigator in more than (10) ten complex conspiracy cases prosecuted within the federal justice system. I have trained other narcotic detectives within DEA and I have taught an Association of Oklahoma Narcotic Enforcers AONE class on the distribution of heroin in the United States. I have completed the following:

    a.    Oklahoma State Bureau of Investigations Clandestine Laboratory Basic Safety Certification and Clandestine Laboratory Site Safety Officer courses presented by Network Environmental Systems.

    b.    The Drug Enforcement Administration (DEA) Basic Narcotics Investigator School.

    c.    The Advanced Undercover Narcotics School.

    d.    Southwest Border Intelligence school and an Outlaw Motorcycle Gang school presented by the Association of Oklahoma Narcotic Enforcers.

    e.    Complex Conspiracies school presented by the Midwest Counter-drug Training Center.

4. I have completed formal training in narcotics investigations from the Tulsa Police Academy, as well as informal training received from more experienced officers. I have participated in over 500 drug-related criminal investigations. I have authored both federal and state search warrants, and have participated in Title III investigations, purchased narcotics in an undercover capacity, and executed controlled deliveries of narcotics. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience. I have interviewed hundreds of defendants involved in the use, manufacture, transportation, and illegal sale of controlled dangerous substances.

5. The information contained in this affidavit is known personally by me and/or was learned by me from other officers or agents, witness interviews or by reviewing reports and documents. Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a search warrant for the described premises, I have not included each and every fact known to me and others regarding the investigation of this matter. I have set forth only the facts that I believe are necessary to establish probable cause. I base my belief that financial and documentary evidence related to the transportation, sale and/or distribution of illegal controlled substances will be recovered based on the information contained within this affidavit.

6. Based on my background, training and experience, as previously detailed in this affidavit, I know:

    a. Drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement. In addition, drug traffickers often use a variety of vehicles, vehicles in the names of others and rental vehicles to prevent detection and identification by law enforcement and to prevent forfeiture of the vehicles;

    b. Even though these assets are in the names of other people, the drug traffickers continue to use these assets and exercise dominion and control over them;

    c. Drug traffickers must maintain a large amount of U.S. currency in order to finance their ongoing drug activities;

    d. Drug traffickers maintain books, computer data and programs, records,

receipts, notes, ledgers, airline tickets, money orders, cashier's checks, records of wire transfers, records of purchase of vehicles and property and other papers relating to the importation, ordering, sale, transportation, possession, purchase and transfer of controlled substances;

  e. Drug traffickers often keep records that are usually recorded in units of weight and monetary value, associated with pounds and kilograms or other such units of measurement and dollar amounts to assist them in their business, records to keep track of amounts "fronted" to customers and money owed by customers for amounts "fronted" by the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained where drug traffickers have ready access to them, i.e., on their persons, in their vehicles, in or about their residences and places of business. These documents are often kept in code to secret their meaning from law enforcement;

  f. It is common for drug traffickers to hide contraband, proceeds of drug sales, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions, records and evidence of drug transactions relating to transferring, hiding or spending large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, within or around their residences and businesses for ready access or to conceal them from law enforcement authorities;

  g. When drug traffickers collect proceeds from the sale of drugs, they attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize

4

some, if not all, of the following means; foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations and business frauds;

    h.    Drug traffickers commonly maintain names, addresses and telephone numbers in books or papers for their associates in the trafficking organization. These books or papers include such items as address books, telephone messages, etc. Shorthand and/or code names are sometimes used for buyers, co-conspirators, sellers, weights and other details of the drug traffickers;

    i.    Drug traffickers hide and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences and the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that the courts have recognized that unexplained wealth is derived from crimes motivated by greed, in particular, drug trafficking;

    j.    The aforementioned books, records, receipts, notes, ledgers and other items mentioned above, are commonly maintained where the drug traffickers have ready access to them and are maintained for long periods of time after the actual event reflected in the documents;

    k.    Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their products. These traffickers usually maintain these photographs in their possession, as in their cellular telephones, iPads, or other portable electronic devices;

l. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs. This paraphernalia includes, but is not limited to, scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m. Drug traffickers often keep hand guns, ammunition and other weapons in their residences (including outbuildings), businesses and automobiles to safeguard supplies of drugs and the proceeds of drug sales;

n. Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement and, in so doing, acquire property, services and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names, and they maintain such documents in evidence of their false identities in their residences (including outbuildings), businesses and automobiles together with evidence of their true identities;

o. Drug traffickers commonly conduct a significant amount of their business by using cellular telephones and other telephone systems and normally make frequent calls to conduct, direct, supervise and coordinate their activities;

p. Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles; and

q. Individuals involved in illegal activities like drug trafficking often generate large amounts of cash from their illegal activities. In order to conceal profits from illegal activities, these individuals employ various types of financial transactions

to disguise and conceal profits. Individuals involved in criminal activities may utilize the facade of a legal enterprise that can be represented as the source of funds arising out of the criminal activity. Individuals involved in illegal activity often physically conceal their funds in locations such as residences, safe deposit boxes, safes or other locations where assets can be physically concealed. Illegal proceeds or assets may also be hidden by placing the assets in third party names including personal property, real property or financial institutions.

7. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including, but not limited to, hard disk drives, floppy disks, thumb drives, compact disks, magnetic tapes, memory chips, cellular telephones, iPads and other portable electronic devices. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c. The aforementioned facts most commonly necessitate the seizure of computers, cellular telephones, iPads and other portable electronic devices and all related computer equipment in order to conduct a search by Forensic Examiners in the well-equipped and controlled environment of a laboratory setting.

8. This affidavit is made in support of an Application for Search Warrant and Search Warrant for the residences described in Attachments "A" and "B."

9. As a result of my participation in the investigation of matters referred to in this affidavit, and based upon reports made to me by other law enforcement agencies and witnesses, I am familiar with the facts and circumstances of this investigation. Attachment "C" is a list of items for which authority is sought to search and seize. Since this affidavit is presented to support an application for a search warrant of the residences described in Attachments "A" and "B", I have not included each and every fact I know concerning this investigation. However, I have set forth the facts

that I believe are essential to establish the necessary foundation and probable cause to support the Application for Search Warrant and Search Warrant for the properties to be searched described in Attachments "A" and "B."

## Probable Cause in Support of Search Warrant

10. In March of 2023, members of the DEA Tulsa Resident Office (TRO) began investigating a drug trafficking organization (DTO) who is sending packages agents believe contain fentanyl and methamphetamine from California to members of the DTO in Tulsa, Oklahoma.

11. On March 21, 2023, members of the Department of Homeland Security (HIS) seized two UPS packages en route from Riverside, California to Tulsa, Oklahoma. One of the packages was in route to 1178 E. 60th Street, apartment A and the other package was in route to 1555 N. Indianapolis Avenue in Tulsa, Oklahoma. Members of HSI authored search warrants to search the packages and upon authorization from a Judge the packages were searched and agents identified that the package en route to 1178 E. 60th Street, apartment A, contained over four kilograms of methamphetamine and the package en route to 1555 N. Indianapolis Avenue, contained over four kilograms of methamphetamine.

12. Through coordination with members of HSI, members of DEA will obtain the two packages containing methamphetamine destined for 1178 E. 60th Street, apartment A and 1555 N. Indianapolis Avenue in Tulsa, Oklahoma.

13. Your Affiant further request an anticipatory search warrant issued for the above-described residences, to be served if, and only if the following triggering events

take place: An Undercover Agent/Officer will pose as a 'UPS" delivery personnel and deliver the parcel containing a trafficking amount of methamphetamine to the both addresses identified as 1178 E. 60th Street, apartment A and 1555 N. Indianapolis Avenue in Tulsa, Oklahoma. Both residences are located in the Northern District of Oklahoma. After the UPS parcel is accepted, the search warrant will be served. At that time, your Affiant believes probable cause will exist to search the above-described property.

14. Your affiant states that when the "triggering event" is initiated, this affidavit is convincingly sufficient in establishing probable cause exists and justifies the issuance of a search warrant for the search of the residences of 1178 E. 60th Street, apartment A and 1555 N. Indianapolis Avenue to include any cell phones or portable electronic communication devices described herein. Each and every fact known to your affiant or others concerning this investigation has not been included in this affidavit. Your affiant has only set forth facts believed to be essential in determining probable cause for issuance of a search warrant for the described residences, vehicles, cell phones and media devices described herein.

15. Based on the foregoing information regarding drug seizures and other information developed during the investigation, together with my training and experience that individuals involved with Drug Trafficking Organizations keep records and other indicia of their involvement and money laundering and drug trafficking at their residences, I believe that items listed on Attachment "C" will be found at the residences located at 1178 E. 60th Street, apartment A and 1555 N.

Indianapolis Avenue in Tulsa, Oklahoma.

## Conclusion

16. WHEREFORE, based on the foregoing, I believe there is probable cause to search the residences located at 1178 E. 60th Street, apartment A and 1555 N. Indianapolis Avenue for the items described in Attachment "C" which are evidence of crimes, fruits or instrumentalities of crimes and property designed for use, intended for use and used in committing crimes, relating to violations of Title 21, United States Code, Sections 846 and 841(a), and respectfully request that a search warrant be issued.

Respectfully Submitted,

_____
TFO William Mackenzie
Drug Enforcement Administration

Sworn before me via telephone this 22nd day of March, 2023.

_____
Jodi F. Jayne
United States Magistrate Judge

## ATTACHMENT "A"

### Location to be Searched
**The search may commence only if the triggering event(s) described in paragraph 13 of the affidavit have occurred.**

**1178 E. 60th Street, apartment A, Tulsa, Oklahoma;** The residence to be searched is a single-family dwelling located in 1100 block of East 60th Street. The residence to be searched is located within the Tamarack Place Apartment Complex located in the area of 1100 E. 60th Street in Tulsa, Oklahoma. The building containing the residence to be searched is constructed of tan siding with brown trim and a brown composite shingle roof. The front door of the residence to be searched is tan in color and has the letter "A" on the door. The numbers "1178" are located on the apartment building. The residence to be searched is more commonly known as **1178 E. 60th Street, apartment A, Tulsa, Oklahoma**. The residence to be searched is located within the Northern District of Oklahoma.



## ATTACHMENT "B"

### Location to be Searched
The search may commence only if the triggering event(s) described in paragraph 13 of the affidavit have occurred.

**1555 N. Indianapolis Avenue, Tulsa, Oklahoma;** The residence to be searched is a single-family dwelling located in 1500 block of North Indianapolis Avenue. The residence to be searched is the second residence East of East Reading Street on the North side of North Indianapolis Avenue. The residence is constructed of grey siding with dark trim. The front door of the residence to be searched is white in color and faces south. The numbers "1555" are located above the front porch. The residence to be searched is more commonly known as **1555 N. Indianapolis Avenue, Tulsa, Oklahoma**. The residence to be searched is located within the Northern District of Oklahoma.



## ATTACHMENT "C"

### Description of Items to be Seized

1. Documents showing ownership of real or personal property;

2. United States Currency or items reflecting drug proceeds;

3. Books, records, receipts, notes and other papers relating to the trafficking of narcotics even though these documents may be in code or in a different language other than English or in electronically stored data.

4. Contraband, including controlled substances, proceeds of drug sales, records of drug transactions, drug sources, drug customers, and other tangible items evidencing the obtaining, secreting, transfer and/or concealment of assets and/or money obtained through or used in the transportation, distribution, and sale of narcotics, including but not limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any corresponding records of account receivable, money paid or received, drugs supplied or received, cash received to be paid for controlled substances or intended to be paid for controlled substances, whether in paper form or electronically stored data on computer discs, cellular telephones, or other storage media;

5. Items of personal property tending to establish the existence of a narcotics conspiracy including but not limited to personal telephone bills, photographs and documents and other items reflecting names, addresses, telephone numbers, and communications;

6. Paraphernalia for distributing, packaging and weighing narcotics.

Equipment and materials used in the building or using concealed compartments;

7. Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

8. Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

9. Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long distance calls reflecting domestic and foreign travel;

10. Any and all appointment calendars;

11. Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys, safes, any and all documents relating to banking activities and other financial transactions including the purchase of real estate and documents showing ownership of real estate;

12. Records relating to employment, wages earned and paid and other compensation records. Records relating to local, state and federal personal and business income, sales and service taxes, including but not limited to, computations, notes and records used for tax purposes;

13. Evidence of proceeds including items relating to maintaining, secreting, gathering or liquidating drug proceeds, particularly: financial records of withdrawals, funds of transfers, purchases, sales, transfers of assets or consolidation of assets. Liquid assets or evidence of them including currency, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, precious metals and jewelry, and documents relating to safe deposit boxes, stocks, bonds and other financial instruments;

14. Evidence of the expenditure of money for the purchase of vehicles or evidence establishing an ownership interest in vehicles, including certificates of title, vehicle tag records, photographs and receipts of vehicle transactions;

15. Cellular telephones

16. Electronic memory chips or storage chips or SIM cards used in cellular telephones and the data and information stored thereon. Computers and data storage devices including discs, drives, CD's and DVD's and the electronically stored data thereon. The electronically kept information or data stored on electronic storage devices, computers or PDA's whether in files or disc, drives, in memory storage devices, in the drives or other electronic storage medium. E-mail, text messages or other notes or records whether financial or otherwise, accessible by computer or other communication services stored in files on hard drives, drives, CD, DVD, in the drives, or other electronic storage medium or device;

17. Firearms, ammunition and articles associated with the possession, ownership and use of firearms including, boxes, receipts, holsters, clips, and equipment.

18. Electronic Devices will only be seized at the time of this warrant service, and will not be searched unless an additional search warrant is obtained.